UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RYDER NICHOLAS, on behalf of herself and a class of similarly situated persons, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| ASCENSION HEALTH, | ) Case No: 4:25 -CV-51<br>)<br>) |
| ASCENSION HEALTH d/b/a ASCENSION PERSONALIZED CARE, and | )<br>)<br>) |
| US HEALTH AND LIFE INSURANCE COMPANY | )<br>)<br>) |
| Defendants. | )<br>) |

## CLASS ACTION COMPLAINT

Plaintiff Ryder Nicholas, individually, and on behalf of all others similarly situated (hereinafter "Plaintiff"), brings this Class Action Complaint against Defendants Ascension Health, Ascension Health d/b/a Ascension Personalized Care, and US Health and Life Insurance Company (collectively, "Defendants"), and alleges upon personal knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. This action arises out of the unlawful cancellation of insurance coverage to Plaintiff and the proposed Class members who received health insurance from Ascension Personalized Care.

2. Headquartered in St. Louis, Missouri, Ascension Health is a massive medical system, which described itself as "one of the nation's leading non-profit and Catholic health systems, with a Mission of delivering compassionate, personalized care to all with special attention

1

to persons living in poverty and those most vulnerable."[1]

3. Ascension Health also provides health insurance through the Affordable Care Act (ACA) Health Insurance Marketplace wherein individuals can enroll in Ascension Personalized Care, a health plan built by Ascension. Ascension Personalized Care insurance benefits are underwritten by U.S. Health and Life Insurance Company.[2]

4. Plaintiff and the proposed Class members were individuals who received coverage from Ascension Personalized Care health insurance.

5. Defendants failed to provide notice that the insurance coverage was no longer available to Plaintiff and the proposed Class members in breach of the insurance policy, or Evidence of Coverage.[3] Defendants' conduct also violates the Texas Insurance Code and Texas Deceptive Trade Practices Act ("TDPA").

6. As a direct and proximate result of Defendants' failure to provide notice, Plaintiff and the proposed Class members have suffered widespread injury and damages, including a complete lack of insurance coverage to date, necessitating Plaintiff to seek relief on a class wide basis.

**PARTIES**

7. Plaintiff is a natural person and resident and citizen of the State of Texas, residing in Austin, Texas, where she intends to remain. Plaintiff is a patient of Ascension, and received insurance coverage through Ascension Personalized Care by way of the ACA Health Insurance Marketplace.

8. Defendant Ascension Health is a not-for-profit corporation organized and existing

---

[1] https://about.ascension.org/about-us (last acc. January 13, 2025).
[2] ACA Insurance | Ascension (last acc. January 13, 2025).
[3] 2024-ascension-personalized-care-evidence-of-coverage-texas.pdf (last acc. January 13, 2025).

2

under the laws of the State of Missouri with a principal place of business at 4600 Edmundson Road, St. Louis, Missouri 63134 in St. Louis County.

9. Defendant Ascension Health d/b/a Ascension Personalized Care has its business address located at 4600 Edmundson Road, St. Louis, Missouri 63134 in St. Louis County. On information and belief, Ascension Health is the parent company for Ascension Personalized Care.

10. Defendant US Health and Life Insurance Company ("US Health") is a qualified health plan issuer in the Federal Health Insurance Marketplace and is the underwriter for Ascension Personalized Care. US Health's principal place of business is located at 800 Tower Drive, Suite 300, Troy, Michigan 48098.

11. Defendant US Health became a part of Ascension in 2015.[4] US Health and Life Insurance Company is licensed to provide health insurance in Indiana, Kansas, Michigan, Ohio, Tennessee, Texas, and Wisconsin.

**JURISDICTION AND VENUE**

12. Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, at least one Class member is a citizen of a different state from that of Defendants, and the amount in controversy exceeds $5 million, exclusive of interests and costs.

13. This Court has personal jurisdiction over Defendants because it maintains its principal place of business in this District, is registered to conduct business in Missouri, and has sufficient minimum contacts with Missouri.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's and

---

[4] About Us | Ascension (last acc. January 13, 2025).

Class members' claims occurred in this District.

## FACTUAL ALLEGATIONS

15. Since January 2024, Plaintiff has been insured through the marketplace with Ascension Personalized Care and pays her monthly premium through Ascension's website portal.

16. On or about May 8, 2024, Ascension experienced a data breach after a cyberattack caused Ascension's systems to shut down.

17. Due to the data breach incident, Ascension's Electronic Health Record System, including MyChart and the website portal were unavailable and/or not functioning properly. The data breach incident also caused issues with billing and claims processing for the marketplace health insurance plans offered by Ascension.[5]

18. On or about May 14, 2024, Plaintiff received an email from Ascension regarding the data breach incident. The email did not say anything about a problem with insurance coverage, nor did it notify Plaintiff that her coverage had been cancelled.

19. In June 2024, Plaintiff logged on to Ascension's portal multiple times to attempt to submit her premium payment. Despite the portal showing that her insurance coverage was still active, the portal indicated that she had no premium payment due. She logged in again in July 2024, and the portal still showed that she had no premium payment due but that her insurance coverage was still active.

20. On or about July 23, 2024, Plaintiff was informed that Ascension Personalized Care would no longer be offering insurance plans beginning on January 1, 2025, but that members would continue to have coverage through December 31, 2024.

21. On or about October 10, 2024, Plaintiff sought medical care at Ascension Medical

---

[5] Ascension health insurance plans also see hiccups following cyberattack | KUT Radio, Austin's NPR Station (last acc. January 13, 2025).

4

Group Seton ("Ascension Medical") in Austin, Texas.

22. At the time she received medical care, Plaintiff believed that she was covered by her insurance, Ascension Personalized Care.

23. On or about October 24, 2024, Plaintiff received a medical bill via email in the amount of $725 without any mention of insurance coverage, which differed from the past medical bills she received. At that time, she realized that her insurance coverage had been unilaterally cancelled.

24. On or about October 24, 2024, Plaintiff contacted Ascension to figure out why she no longer had insurance coverage, but she was not provided with any answers or support.

25. On or about October 24, 2024, Plaintiff also made a written complaint through Ascension's online portal and sent a copy of the complaint to Ascension's customer support email address.

26. On or about October 31, 2024, Plaintiff filed a complaint with the Texas Department of Insurance regarding Defendants' unilateral cancellation of insurance coverage.

27. On or about November 4, 2024, Plaintiff also emailed several executives at Ascension and US Health and Life Insurance Company, which prompted a phone call from a customer service representative. The customer service representative informed her that a supervisor would call to discuss Plaintiff's complaints. However, she has never received any phone call from a supervisor to date, nor has she been able to discuss this issue with anyone else at Ascension, or at US Health and Life Insurance Company.

28. Since October 24, 2024, Plaintiff has received weekly text message notifications from Ascension Medical that she owes money from her medical care on October 10, 2024.

29. To date, Plaintiff has not received any notification whatsoever from Defendants

stating any reason or otherwise acknowledging the fact that her insurance coverage had been cancelled. She has also not received any communication as to why her insurance is not applicable to her current medical bills.

30. Plaintiff has been unable to continue to receive the medical care and treatment she needs because her insurance coverage has been cancelled and has not been reinstated. This includes follow-up appointments for pre-cancer screening services and other necessary women's health services.

31. Plaintiff is unable to devote her full time and attention to her professional duties at work because dealing with this issue has taken up a significant amount of her time.

32. Plaintiff has experienced significant stress and anxiety relating to her outstanding medical debt, including the fact that she is worried about the future care she needs but cannot get, and that she is worried she will be reported to a credit agency. Plaintiff is also frustrated by the lack of transparency from Defendants and has been unable to get any answers to her questions.

33. Plaintiff is not the only person who has experienced a loss of insurance coverage without notice from Defendants. Upon information and belief, Ascension Personalized Care provides insurance coverage to individuals in Texas, Indiana, Tennessee, Michigan, Ohio, Wisconsin and Kansas.

34. Defendants violated state and federal law, including 45 C.F.R. § 147.128, which requires that a health insurance insurer provide thirty (30) days advance written notice to each insured before coverage may be rescinded.

35. On or about June 11, 2024, Ascension released a media statement noting that the Electronic Health Record system was restored for several states, including for Tennessee, Kansas,

a part of Indiana, a part of Michigan, and Central Texas where Plaintiff sought medical care. [6]

36.     Despite the purported restoration of the system, upon information and belief, Plaintiff and the proposed Class Members continue to be without insurance coverage to date and with no explanation from Defendants as to why.

## CLASS ACTION ALLEGATIONS

37.     Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4) and/or 23(c)(5), Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**Nationwide Class**
All individuals residing in the United States whose insurance coverage was cancelled without notice from Defendants.

38.     Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39.     Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

40.     <u>Numerosity.</u> The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of individuals is currently unknown to Plaintiff and exclusively in the possession of Defendants, upon information and belief, thousands of individuals were impacted. The Class is apparently identifiable within Defendants' records, and Defendants has already identified these individuals (as evidenced by

---

[6] Cybersecurity Event Update | Ascension (last acc. January 13, 2025).

sending them notifications that their insurance will end on January 1, 2025).

41. Common questions of law and fact exists as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, including the following:

   a. Whether Defendants had respective duties to notify individuals that their insurance coverage was cancelled;

   b. Whether Defendants failed to notify individuals that their insurance coverage was cancelled;

   c. Whether Defendants violated federal and state laws by failing to notify individuals that their insurance coverage was cancelled;

   d. Whether Defendants adequately addressed and fixed the lack of insurance coverage;

   e. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct;

   f. Whether Plaintiff and Class Members are entitled to injunctive relief to address the imminent and currently ongoing harm faced as a result of the unilateral cancellation of insurance coverage.

42. <u>Typicality.</u> Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

43. Policies Generally Applicable to the class: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the

Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

44. <u>Adequacy:</u> Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages she has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action, and Plaintiff intends to prosecute this action vigorously.

45. <u>Superiority and Manageability:</u> The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single form simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical or impose a burden on the courts.

46. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class

4896-2842-4717, v. 1

Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

47. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

48. Unless a Class-wide injunction is issued, Defendants may continue in its failure to notify Class Members of the cancellation of insurance coverage, Defendants may continue to refuse to provide proper notification to Class Members regarding their insurance coverage, or lack thereof, and Defendants may continue to act unlawfully as set forth in this Complaint.

49. Further, Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

50. Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issue include, but are not limited to:

    a. Whether Defendants had respective duties to notify individuals that their insurance coverage was cancelled;

    b. Whether Defendants failed to notify individuals that their insurance coverage was cancelled;

    c. Whether Defendants violated federal and state laws by failing to notify individuals that their insurance coverage was cancelled;

    d. Whether Defendants adequately addressed and fixed the lack of insurance coverage;

    e.   Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct;

    f.   Whether Plaintiff and Class Members are entitled to injunctive relief to address the imminent and currently ongoing harm faced as a result of the unilateral cancellation of insurance coverage.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

51.    Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

52.    Plaintiff and Defendants entered into a contract through the insurance policy, or Evidence of Coverage. The Evidence of Coverage constitutes a valid, binding, and enforceable contract between the parties.[7]

53.    Defendants have breached the Evidence of Coverage by failing to provide notice to Plaintiff and the Class Members that their insurance coverage was cancelled.

54.    At the time of her medical care and in the time since, Plaintiff has performed all obligations under her policy of insurance and was entitled to coverage.

55.    As a direct result of Defendants' breach, Plaintiff and members of the Class have sustained significant damages for which Defendants are liable.

### COUNT II
### Breach of Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

56.    Plaintiff re-alleges and incorporates by reference all preceding allegations, as if

---

[7] 2024-ascension-personalized-care-evidence-of-coverage-texas.pdf (last acc. January 13, 2025).

fully set forth herein.

57. Every contract, including the Evidence of Coverage, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

58. Defendants acted improperly and inconsistent with the reasonable expectations of the parties by wholly failing to provide notice that it was cancelling, and/or rescinding insurance coverage, under the Ascension Personalized Care health insurance plans.

59. Defendants further breached the covenant of good faith and fair dealing, in part, by refusing to provide any additional details regarding the sudden cancellation of insurance coverage without notice and for failing to provide reasons as to why Plaintiff and Class Members' medical bills are no longer covered by insurance.

60. Defendants' breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class Members.

### COUNT III
### Violations of the Texas Insurance Code
### (On Behalf of Plaintiff and the Class)

61. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

62. Defendants' conduct constitutes multiple violations of the Texas Insurance Code. All such violations were a direct cause of damages to Plaintiff and the Class Members.

63. Defendants violated **TX INS. § 551.053** and **§ 551.055** by failing to provide written notice of cancellation to Plaintiff and the Class Members, and further, failing to provide any reason

for the cancellation to Plaintiff and the Class Members.

64.     Defendants violated Chapter 542 of the Texas Insurance Code, Prompt Payment of Claims Act, by failing to timely acknowledge, accept, and pay Plaintiff and the Class Members' medical bills, including by violating **TX INS. § 542.058.**

65.     Defendants also violated Chapter 541 of the Texas Insurance Code, Unfair Settlement Practices, including, but not limited to, the following ways:

   a. **TX INS. § 541.060(a)(3)**, failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

   b. **TX. INS. § 541.060(a)(4)(A)**, failing within a reasonable time to affirm or deny coverage of a claim to a policyholder; and

   c. **TX INS. § 541.060(a)(7)**, refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

66.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff and the Class Members are entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Evidence of Coverage, mental anguish, court costs, interest, and attorneys' fees, and all other damages to which they are entitled. For knowing conduct of the acts and conduct described and complained of above, Plaintiff and the Class Members are entitled to three (3) times her actual damages under TX. INS. § 541.152.

67.     For noncompliance with the Texas Insurance Code, Prompt Payment of Claims Act, Plaintiff and the Class Members are entitled to simple interest on the amount of their claim as damages each year at the rate determined on the date of judgment, by adding five percent (5%) of the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees under TX. INS. § 542.060.

**COUNT IV**
**Violations of the Texas Deceptive Trade Practices--Consumer Protection Act**

**(On Behalf of Plaintiff and the Class)**

68. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

69. At times relevant to this action, the Texas Deceptive Trade Practices Act ("DTPA") was in full force and effect.

70. The DTPA's primary purpose is to protect consumers against false, misleading and deceptive business and insurance practices, unconscionable actions, and breaches of warranty.

71. Plaintiff is a consumer as defined by the Act.

72. Pursuant to Section 17.50, a consumer may bring a cause of action under the DTPA for any violation of the Texas Insurance Code. Tex. Bus. & Com. Code §17.50(a)(4).

73. The conduct of Defendants as alleged herein and above constitutes a deceptive act or practice, including but not limited to:

   a. Violations of the Texas Insurance Code by failing to provide notice to Plaintiff and Class Members of the cancellation/rescission of their insurance coverage;

   b. Violations of the Texas Insurance Code by failing to provide Plaintiff and Class Members any justification or reason or explanation for the unilateral cancellation/rescission of insurance coverage;

   c. Violations of the Texas Insurance Code by engaging in unfair settlement practices, including by failing to provide coverage for Plaintiff and Class Members' medical bills even though they had insurance coverage; and

   d. Violations of the Texas Insurance Code by failing to provide Plaintiff and Class Members any justification or explanation for why their medical bills are not being covered.

74. Defendants engaged in the foregoing conduct knowingly and intentionally.

75. As a result of Defendants' knowing and deceptive conduct, Plaintiff and the Class Members have suffered actual, economic, and mental anguish damages.

76. Pursuant to Section 17.50(d) of the DTPA, Plaintiff is entitled to recover court costs

and reasonable and necessary attorneys' fees associated with prosecuting this action.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and on behalf of the proposed Class, requests that the Court:

a. Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class;

b. Find that Defendants breached its contract and the covenant of good faith and fair dealing with Plaintiff and Class Members;

c. Find that Defendants violated the Texas Insurance Code and Texas Deceptive Trade Practices Act;

d. Enter an order directing Defendants to reinstate insurance coverage;

e. Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution, and disgorgement;

f. Award specific performance, equitable, injunctive, and declaratory relief as may be appropriate;

g. Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

h. Award pre-judgment and post-judgment interest as prescribed by law; and

i. Grant additional legal or equitable relief as this Court may find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

4896-2842-4717, v. 1

Respectfully submitted,

*/s/ John F. Garvey*
John F. Garvey #35879 (MO)
Colleen Garvey #72809 (MO)
Ellen A. Thomas, #73043 (MO)
STRANCH, JENNINGS & GARVEY, PLLC
701 Market Street, Suite 1510
St. Louis, Missouri 63101
Telephone: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

J. Gerard Stranch, IV
Grayson Wells
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

4896-2842-4717, v. 1