UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RYDER NICHOLAS, on behalf of herself and a class a similarly situated persons, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:25-cv-00051-JAR |
| ASCENSION HEALTH, et al., | ) ) ) |
| Defendants, | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Ascension Health, Ascension Health d/b/a/ Ascension Personalized Care, and US Health and Life Insurance Company's motion to dismiss. ECF No. 19.  Plaintiff Ryder Nicholas filed a response (ECF No. 21), and Defendants have filed a reply (ECF No. 22).  The motion is now fully briefed and ripe for disposition.  For the reasons set forth below, the motion will be granted in part and denied in part.  In lieu of dismissal, the Court will permit Plaintiff an opportunity to file an amended Complaint.

**Background**

The Complaint

On January 12, 2025, Plaintiff filed her class action Complaint.  ECF No. 1.  Plaintiff alleges the following facts, which the Court must accept as true for the purposes of the motion to dismiss:

In January 2024, Plaintiff enrolled in a health insurance plan with Ascension Personalized Care through the Affordable Care Act Health Insurance Marketplace. She pays her monthly premium through Ascension's[1] website portal.

On or about May 8, 2024, Ascension experienced a data breach after a cyberattack, which caused Ascension's systems to shut down. Following the breach, Ascension's health records system and online portal were unavailable or not functioning properly. On or about May 14, 2025, Plaintiff received an email from Ascension about the data breach. In June 2024, Plaintiff visited Ascension's portal several times to attempt to submit a premium payment, but the portal indicated that no premium was due. Plaintiff again visited the portal in July 2024, but again the portal indicated that no premium payment was due. Each time Plaintiff visited the portal in June and July 2024, it indicated that her insurance coverage was still active. On or about July 23, 2024, Ascension Personalized Care informed Plaintiff via a letter that it would no longer offer insurance plans starting January 1, 2025, but that currently covered members would still have coverage through December 31, 2024.

On or about October 10, 2024, Plaintiff sought medical care at Ascension Medical Group Seton in Austin, Texas. She believed this care was covered by her insurance policy provided by Ascension Personalize Care. On or about October 24, 2024, Plaintiff received $725 medical bill for the October 10 visit date. This bill made no mention of insurance coverage. Plaintiff realized after receiving this bill that her insurance coverage had been cancelled.

On or about October 24, 2024, Plaintiff contacted Ascension to determine why she no longer had insurance coverage, but she was unable to get an answer. That same day, she made a

---

[1] Throughout the Complaint, Plaintiff frequently makes no distinction between the three Defendants, often referring to them collectively simply as "Ascension."

2

written complaint through Ascension's online portal and emailed a copy of her complaint to Ascension's customer support. On or about October 31, 2024, Plaintiff filed a complaint with the Texas Department of Insurance related to the cancelation of her insurance. On or about November 4, 2024, Plaintiff emailed several executives at Ascension and US Health and Life about her issues. A customer service representative contacted Plaintiff and informed her that a supervisor would call Plaintiff to discuss her complaints. Neither a supervisor nor anyone else from Ascension has contacted Plaintiff again.

Since October 24, 2024, Plaintiff receives weekly text messages from Ascension Medical indicating that she still owes money on the bill she received for the services rendered on October 10, 2024. Plaintiff has not received notice from Defendants stating why her insurance was canceled or why her October 10 care visit was not covered by her insurance.

Plaintiff is unable to receive medical care because her insurance coverage has been canceled. The issue with her medical bill and insurance coverage has caused Plaintiff to be unable to devote her full time and attention to her job because dealing with her insurance issues has taken so much of her time. Plaintiff has experienced stress and anxiety because of her existing medical debt, the potential that her debt will be sent to collections, and her inability to receive future medical care. Plaintiff is also frustrated by Defendants' lack of transparency and inability to provide her with answers about the cancelation of her insurance. Plaintiff believes others have also had their insurance coverage wrongfully cancelled, and she intends to represent this purported class of persons.

Plaintiff's Complaint raises claims in four separate counts: Count I for breach of contract; Count II for breach of the covenant of good faith and fair dealing; Count III for violations of the

Texas Insurance Code; and Count IV for violations of the Texas Deceptive Trade Practice Act ("TDTPA").

As to Count I, Plaintiff alleges that she entered into a contract with Defendants, and that Defendants breached this contract by failing to provide notice to Plaintiff that her insurance coverage had been cancelled.  In lieu of attaching a copy of this contract to the Complaint, Plaintiff includes a hyperlink to a document titled "Ascension Personalized Care Individual EPO Medical Policy" authored by US Health and Life Insurance Company, which Plaintiff calls the "Evidence of Coverage."  Plaintiff generally alleges that at the time of her medical care on October 10, 2024, and since, she has performed all obligations under her policy and is therefore entitled to coverage.  She claims to have sustained significant damages.

As to Count II, Plaintiff alleges that Defendants acted improperly and inconsistently with her reasonable expectations by failing to provide her with notice that it was canceling her insurance policy and/or rescinding her insurance coverage.  Plaintiff further alleges that Defendants breached the implied covenant of good faith and fair dealing by refusing to provide her with an explanation for the cancellation of her insurance coverage without notice or an explanation for why her care on October 10, 2024, was not covered by her insurance.  Plaintiff claims that these breaches have caused her damages.

As to Count III, Plaintiff alleges that Defendants have violated the following Texas statutes: Tex. Ins. Code §§ 551.053, 551.055, 542.058, 541.060(a)(3), (a)(4)(A), and (a)(7). Plaintiff asserts that she is due actual damages for these violations per the Texas Insurance Code and is due treble damages if it is found that Defendants knowingly violated the statutes.

As to Count IV, Plaintiff alleges that the pleaded violations of the Texas Insurance Code are also violations of the TDTPA.  Plaintiff further alleges that Defendants acted knowingly and

4

voluntarily when they violated the Texas Insurance Code. Plaintiff claims that Defendants violations of the TDTPA caused her to suffer actual, economic, and mental anguish damages.

<u>The Motion</u>

On March 3, 2025, Defendants filed their motion to dismiss and a memorandum in support. ECF Nos. 19 and 20. Defendants argue that all of Plaintiffs' claims should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternately, failure to state a claim under Rule 12(b)(6).

Defendants contend that this Court lacks jurisdiction over this case because Plaintiff has failed to plead sufficient facts establishing that she has standing to sue. Specifically, Defendants argue that Plaintiff has failed to allege that her injuries are fairly traceable to Defendants' conduct. Defendants also aver that Plaintiff's claims of emotional distress damages are not cognizable in a breach of contract action and therefore her allegations regarding damages also are insufficient to establish standing.

On Count I, Defendants argue that Plaintiff has failed to allege a breach of contract. Defendants' position is that Plaintiff has only generally alleged that Defendants breached the insurance coverage contract and has failed to point to any specific provision in the contract that Defendants are to have breached. Similarly, Defendants contend that Plaintiff has failed to adequately allege that she performed under the contract, i.e., that she paid her insurance premiums. Finally, Defendants contend that Plaintiff has failed to plead that her damages were caused by the alleged breach or that emotional distress and lost time are the types of damages she is entitled to in a breach of contract claim.

On Count II, Defendants argue that, if Defendants did not breach a contractual duty, they could not have acted in bad faith as a matter of law. Defendants say that Plaintiff merely alleges

5

that Defendants breached the covenant of good faith and fair dealing when it acted against her reasonable expectations though she fails to provide any references to the contract that indicate that such expectations were reasonable.  Additionally, Defendants argue that Plaintiff's allegations of breach of the covenant fail for separate reasons under both Missouri and Texas law.

On Count III, Defendants dispute that Tex. Ins. Code §§ 551.053 and 551.055 are applicable to health insurance coverage at all.  Defendants cite to Texas Insurance Code § 551.051, which does not include health insurance in its definition of "Liability Insurance" on which §§ 551.053 and 551.055 depend.  Defendants argue that Plaintiff has similarly not properly alleged violations of Texas Insurance Code §§ 541.060 and 542.058 because: (1) she has not alleged that her medical bill would be covered under the policy, and (2) she does not plead that she was insured at the time of her October 2024 medical appointment.  Specifically as to the alleged violations of Texas Insurance Code § 541.060, Defendants assert that Plaintiff cannot maintain a claim because she has failed to allege that (1) she ever submitted a claim to Defendants; (2) Ascension lacked justification for cancelling her policy; and (3) Ascension failed to conduct a reasonable investigation into her submitted claims.

On Count IV, Defendants argue that Plaintiff's TDTPA claims should be dismissed because: (1) Plaintiff's allegations fail to meet the heightened pleading standard required by the TDTPA; (2) Plaintiff has failed to allege any specific violation of § 17.50(a) of the TDTPA because she fails to allege a violation of the Texas Insurance Code; and (3) Plaintiff has failed to allege how any deceptive act has caused her damages.

Defendants also separately argue that Ascension Health should be dismissed because it does not issue insurance policies.  According to Defendants, Plaintiff's insurance agreement was with US Health and Life Insurance and not the Ascension entities.  Defendants request dismissal

6

of the Ascension entities because Plaintiff has failed to plead that they were parties to the insurance policy and therefore all of her claims—which sound in breach of contract—cannot be maintained against Defendants with which Plaintiff had no contractual agreement.

Plaintiff's response argues that the Court should deny Defendants' motion and allow Plaintiff to proceed on most of her claims. Plaintiff generally contends that she has standing to sue because she alleges a breach of contract. Citing to *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017), Plaintiff states that "a party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged." ECF No. 21 at 3.

Plaintiff also states that she has alleged a causal connection between the alleged breach of contract and her injuries. Plaintiff argues that because the Defendants' failure to provide notice of the cancellation of her insurance policy caused her to incur a large medical bill and to have no health insurance, her injuries are fairly traceable to Defendants' alleged wrongful actions. Plaintiff also asserts that her claims for emotional damages and lost time are concrete, tangible injuries in contract dispute cases, citing to several out-of-circuit decisions by courts deciding standing issues in data breach cases.

Plaintiff attests that she has properly alleged breach of contract in Count I. Plaintiff points to her generalized allegations that Defendants breached the Evidence of Coverage, though she does not cite a specific provision therein that Defendants are to have violated. Plaintiff then raises a separate argument that she alleges a violation of 45 C.F.R. § 147.128 that requires a health insurance provider to notify an insured in writing thirty (30) days before the insurer can rescind coverage. She argues that she has alleged that she performed all of her obligations under the contract and that she has paid or has attempted to pay her premiums through the Ascension

7

portal. She states that "[t]he data breach's impact on Plaintiff's ability to submit payment and confirm coverage does not negate her performance . . . ." *Id.* at 7. She says that these allegations, when accepted as true, are sufficient to show that she performed under the contract. Nowhere does Plaintiff specifically state that she paid her premiums any time after the May 2024 data breach. Plaintiff additionally contends that by confirming her coverage was active in June and July of 2024, she properly believed that she had insurance coverage. She further asserts that this belief caused her to incur an unexpected medical bill, which was a "natural and foreseeable result of Ascension's wrongful cancellation of insurance and failure to provide notice of such cancelation." *Id.* at 8.

Plaintiff argues that she has properly alleged a breach of the covenant of good faith and fair dealing because she reasonably expected that her insurance coverage would continue without a notice of cancelation. Plaintiff believes that Defendants' failure to notify her of the cancelation undermined her reasonable expectations of continued insurance coverage. She then states that the failure to notify her of the cancelation and Defendants' failure to later explain this cancelation deprived her of the expected benefit of the contract, i.e., insurance coverage. Plaintiff additionally contends that, under Texas law, an insurer breaches a duty of good faith and fair dealing when it cancels a policy without a reasonable basis or when it delays payment without justification. Again, Plaintiff connects Defendants' "misleading action, including showing active coverage on its website and assuring Plaintiff her coverage would remain in effect until December 31, 2024" to her allegations of bad faith. *Id.* at 9.

Plaintiff acknowledges that she cannot maintain claims under Texas Insurance Code. §§ 551.053 and 551.055 because those statutes do not apply to health insurance policies. But she argues that her other allegations of violations of the Texas Insurance Code are sufficient to

8

survive the motion to dismiss.  Plaintiff again relies on her allegations regarding her visits to the Ascension portal in June and July 2024 and the email regarding the termination of coverage on January 1, 2025, as sufficient to allege that her medical visit on October 10, 2024, should have been covered by her insurance.  Plaintiff then points to allegations in the Complaint regarding her repeated attempts to contact Defendants as allegations that she filed an insurance claim under Texas Insurance Code § 541.060.

Plaintiff asserts that her claim under the TDTPA is not subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  For support, Plaintiff cites to a Texas case stating that violations of the Texas Insurance Code, Chapter 541, are also violations of the TDTPA.  As to causation, Plaintiff argues that, under Texas law, all that is required to show cause under the TDTPA is "producing cause," and that she has properly alleged the producing cause.  According to Plaintiff, Defendant's cancelation of her insurance policy made her incur medical costs, took attention away from her work, and made her unable to seek additional medical care resulting in anxiety.

Plaintiff also maintains that Ascension Health is the parent company for US Health and Life and that this relationship is sufficient to hold Ascension liable for any damages Plaintiff claims even if the Ascension entities are not explicitly parties to the contract.

Defendants' reply largely restates the arguments they raise in their motion.  Defendants particularly note that Plaintiff appears to acknowledge in her response that she missed premium payments and has therefore admitted that Defendants rightfully cancelled her policy under the policies' own terms.  Defendants also take issue with Plaintiff's attempt to add allegations to her Complaint via her response brief.  Defendants emphasize that the Court must determine if the allegations contained within the Complaint are sufficient to maintain Plaintiff's claims against

9

Defendants, and Defendants ask the Court not to credit Plaintiff's additional allegations that appear for the first time in her response.

## Legal Standard

When a party challenges the Court's subject matter jurisdiction, at issue is the Court's "very power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). In these instances, the Court has substantial discretion and is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Little Otters of Love, LLC v. Rosenburg*, 724 F. App'x 498, 501 (8th Cir. 2018) (per curium) (citation omitted).

In deciding a motion under Rule 12(b)(1), the Court "must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (citing *Osborn*, 918 F.2d at 729 n.6). In either case, the plaintiff bears the burden of proving that subject matter jurisdiction exists. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019).

Defendants do not specifically state whether they are lodging a facial or factual attack to Plaintiff's standing, but upon careful review of Defendants' briefing, the Court interprets Defendants' arguments as raising a facial challenge. Thus, the Court must accept as true all facts alleged in Plaintiff's Complaint as it would on any motion to dismiss raised under Rule 12(b)(6). *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. A complaint must be dismissed for failure to state a claim when it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings must include sufficient factual information to provide

10

notice of the grounds on which the claims rest and must "raise a right to relief above a speculative level." *Id.* at 555; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (citation omitted).

**Discussion**

A.    Standing

Article III of the Constitution limits the jurisdiction of federal court to "Cases" and "Controversies."  U.S. CONST. art. III, § 2.  "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To establish this personal stake, plaintiffs must show: (1) they have suffered an "injury in fact" that is concrete, particularized, and actual or imminent, (2) that there is a causal connection between the alleged injury and the defendant's conduct, and (3) that judicial relief will likely redress the injury. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560–61 (1992).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.  Plaintiffs, therefore, "must support each element in the same way as any other matter on which they bear the burden of proof." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021) (citing *Lujan*, 504 U.S. at 561) (internal quotation marks omitted). Therefore, on a motion to dismiss, "plaintiffs must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

11

An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan,* 504 U.S. at 560)). "A concrete injury must be *de facto*; that is, it must actually exist" in reality rather than in the abstract. *Id.* at 340 (cleaned up). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* at 339 (cleaned up).

"For causation to exist, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021) (citation omitted). This "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm. That connection cannot be overly attenuated." *Id.*

Redressability requires the plaintiff to show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. In assessing redressability, the court must "consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. at 671 (citation and internal quotation marks omitted).

Here, Plaintiff sufficiently alleges that she has suffered an injury in fact that was caused by the wrongful actions of Defendants and can be redressed by the Court—though just barely. Plaintiff alleges that Defendants failed to provide her notice that her insurance coverage had been canceled in violation of the Evidence of Coverage. ECF No. 1 at ¶¶ 5, 6, 53. Plaintiff also alleges, broadly, that Defendants wrongfully canceled her insurance coverage. *Id.* at ¶ 1, Plaintiff alleges that these actions have caused her the following injuries: (1) incurring a bill for medical treatment she sought on October 10, 2024; (2) lost time in trying to resolve issues

regarding her insurance coverage; (3) stress and anxiety regarding her medical debt; (4) loss of insurance coverage; and (5) the inability to seek additional medical care.

Plaintiff adequately alleges that the unlawful cancelation of her insurance coverage caused her to incur a medical bill of approximately $750, which is a concrete and particularized injury that can be redressed if the Court or a jury finds that Plaintiff is due compensatory damages. The Court is not convinced that Plaintiff's alleged injuries regarding lost time and mental stress are cognizable claims in a breach of contract action, but because it finds that Plaintiff has sufficiently pleaded the minimum elements for standing as to at least one of her claims, the Court need not take up that issue.

B.  Choice of Law

Both Defendants and Plaintiff argue that the Court need not definitively decide whether Missouri or Texas law applies to the common law claims in this diversity action. Defendants argue that under both Missouri and Texas law, Plaintiff fails to allege breach of contract and breach of covenant of good faith and fair dealing claims. Plaintiff similarly argues that Plaintiff has sufficiently pleaded facts sufficient to maintain these common law claims regardless of whether Missouri or Texas law is applied. The Court agrees that it need not make a definitive determination regarding what law applies here because the elements required to prove common law claims for breach of contract and breach of the covenant of good faith and fair dealing are substantially similar under Missouri and Texas law.

C.  Failure to State a Claim

Though Plaintiff has alleged sufficient facts necessary to find that she has standing to sue, she has failed to adequately allege sufficient facts to maintain any of her claims against Defendants. All of Plaintiff's claims rest on her allegations that Defendants breached the

13

insurance contract with Plaintiff when they canceled her insurance coverage without notice. But because Plaintiff has failed to allege what specific provisions of the insurance contract Defendants are to have violated or otherwise fails to adequately allege facts indicating that she performed under the contract, she cannot maintain a claim for breach of contract against these Defendants.  And because she cannot maintain a claim for breach of contract, her claims of breach of the covenant of good faith and fair dealing, violations of the Texas Insurance Code, and violation of the TDTPA must also fail.

                1.        <u>Plaintiff Fails to Adequately Allege Breach of Contract</u>

To succeed on a breach of contract claim, a plaintiff must prove each of the following essential elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Bell v. Shelter Gen. Ins. Co.*, 701 S.W.3d 614, 618 (Mo. 2024) (en banc) (citation omitted); *see also Atrium Med. Ctr., LP v. Houston Red C LLC*, 546 S.W.3d 305, 311 (Tex. App. 2017) ("To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach.") (citation omitted).  Defendants argue that Plaintiff has failed to allege sufficient facts establishing these elements.

The Court agrees that Plaintiff has failed to allege the terms of the contract that Defendants are to have breached.  Additionally, Plaintiff's conclusory allegations that she has performed her obligations under the contract, without factual allegations regarding her performance, are insufficient to maintain a claim for breach of contract.

Plaintiff has failed to allege that Defendants have breached any specific contract provisions or have otherwise deprived her of her rights under the contract. Instead, Plaintiff generally alleges that Defendants breached the Evidence of Coverage when Defendants failed to notify her of the cancelation of her coverage. Plaintiff does not cite to any portion of the contract that requires Defendants to provide her with notice of cancelation of coverage. Because the Court cannot determine from these generalized allegations which contractual rights or obligations Defendants are to have breached, the Court finds that Plaintiff's breach of contract claim fails to state a claim. *See Trotter's Corp. v. Ringleader Rests., Inc.*, 929 S.W.2d 935, 941 (Mo. Ct. App. 1996) (finding that plaintiff failed to state a claim for breach of contract "because [plaintiff's claim] does not set out defendants' rights or [plaintiff's] obligations under the contract."); *see also Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 668 (W.D. Tex. 2017) (stating that, under Texas law, "a plaintiff must identify a specific provision of the contract that was allegedly breached.") (citation omitted).

Similarly, Plaintiff has failed to adequately allege that she has performed under the contract. Plaintiff merely relies on her conclusory allegation that she has performed her obligations under the contract. Plaintiff does not allege what those obligations are, nor does she allege how she has specifically performed her obligations. Because Plaintiff cannot rely on conclusory allegations regarding her performance to maintain a breach of contract action.

Plaintiff's allegation that Defendants violated 45 C.F.R. § 147.128[2] cannot provide a basis on which to maintain a breach of contract claim. As stated above, essential elements of a

---

[2] The Court is also skeptical that 45 C.F.R. § 147.128 is even applicable in this matter. That regulation covers rescissions of health insurance coverage but does not apply to all cancelations of coverage. According to the regulation's own terms, "[f]or the purposes of this section, a recission is a cancelation or discontinuance of coverage that has retroactive effect." 45 C.F.R. § 147.128(a)(2). In contrast, the regulation provides definitions for when a cancelation is

15

breach of contract claim under both Missouri and Texas law are the existence of terms of a contract and breach of specific terms of the contract. Plaintiff makes no attempt to connect an allegation of a violation of a federal regulation to the terms of the Evidence of Coverage. The Court does not credit this allegation as evidence of a violation of a contractual term.

        2.        <u>Plaintiff Fails to Adequately Allege a Breach of the Covenant of Good Faith and Fair Dealing</u>

"Missouri law implies a covenant of good faith and fair dealing in every contract." *Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. 1998) (en banc). The covenant prevents a party from exercising "a judgment conferred by the express terms of the agreement in such a manner that evades the spirit of the transaction or denies the other party the expected benefit of the contract." *Countrywide Servs. Corp. v. SIA Ins., Co.*, 235 F.3d 390, 393 (8th Cir. 2000) (citation omitted). However, the covenant "cannot give rise to new obligations not otherwise contained in a contract's express terms." *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 466 (8th Cir. 2002). Similarly, under Texas law, "where the plaintiff has no right to receive benefits under the contract, there can be no breach of the implied covenant of good faith." *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 669 (W.D. Tex. 2013).

Plaintiff fails to adequately allege a claim for breach of the implied covenant of good faith and fair dealing under both Missouri and Texas law. As already noted, Plaintiff has failed to allege facts establishing that Defendants owed her a specific duty under the contract. Plaintiff alleges only that she believed that she still had insurance when she attended her medical appointment on October 10 and otherwise believed that her care would be paid for by her health insurance when she received it. Because Plaintiff has failed to adequately allege that Defendants

---

not a rescission. *See id.* at (a)(2)(i)–(iv). Plaintiff has not alleged that the cancelation here qualifies as a rescission because it had retroactive effect.

16

had a specific duty to continue her insurance coverage under the contract or to provide her with specific notice of the cancelations of her coverage, she cannot maintain a claim that Defendants breached the covenant of good faith and fair dealing.

        3.      <u>Plaintiff Fails to Adequately Allege Breaches of the Texas Insurance Code</u>

           a.      <u>Tex. Ins. Code §§ 551.053 and 551.055</u>

As a preliminary matter, Plaintiff acknowledges that she in unable to maintain claims against Defendants for alleged violations of the Texas Insurance Code §§ 551.053 and 551.055 because these specific provisions do not apply to health insurance. The Court agrees that these statutes are not applicable to health insurance claims because the chapter of the Texas Insurance Code that includes these two sections applies only to certain forms of "liability insurance," which does not include health insurance. *See* Tex. Ins. Code § 551.051(2). Plaintiff cannot maintain a claim for breach of the Texas Insurance Code based on alleged violations of Tex. Ins. Code §§ 551.053 and 551.055.

           b.      <u>Tex. Ins. Code §§ 541.060 and 542.058</u>

Texas Insurance Code § 541.060 states that it is "an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary . . . ." The remainder of the statute sets out that types of unfair and deceptive acts that qualify as unfair settlement practices. Section 542.058 provides that an insurer shall pay damages for delaying payment on a properly covered claim. *See* Tex. Ins. Code § 542.058(a).

The Texas Supreme Court has stated that "the [Texas] Insurance Code supplements the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits." *USAA*

17

*Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (citing Tex. Ins. Code § 541.060(a) as an example).  The *Menchaca* decision provides a framework for assessing the relationship between contractual claims under insurance policies and tort claims under the Texas Insurance Code:

> The primary question . . . is whether an insured can recover policy benefits as "actual damages" caused by an insurer's statutory violation absent a finding that the insured had a contractual right to the benefits under the insurance policy.  Generally, the answer to this question is "no," but the issue is complicated and involves several related questions.  In an effort to clarify these issues, we distill from our decisions five distinct but interrelated rules that govern the relationship between contractual and extra-contractual claims in the insurance context.  First, as a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits.  Second, an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits.  Third, even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual damages under the Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right.  Fourth, if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits.  And fifth, an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.

*Id.* at 489.

Plaintiff's claim for violations of Tex. Ins. Code §§ 541.060 and 542.058 fails because Plaintiff has not sufficiently alleged that she had a contractual right to the benefits of an insurance policy.  This is true because of facts Plaintiff has both alleged and not alleged.  Plaintiff alleges that she did not have insurance coverage when she sought medical services on October 10, 2024.  She alleges that she only realized that she lacked insurance coverage when she received a bill for those services on October 24, 2024.  She does not allege that she was denied coverage for a claim that otherwise should have been covered by the policy, only that she believed her medical bill should have been covered by her policy when she received care.  She

18

similarly does not allege that she submitted a claim to Defendants. She instead alleges that after she discovered that her insurance coverage was cancelled, she sought clarification for why the cancelation occurred and filed a complaint against Defendants.

Even taking these allegations as true, Plaintiff cannot maintain a claim against Defendants for violations of the Texas Insurance Code. Plaintiff has not adequately alleged that she should enjoy the benefits of the policy. Defendants have no statutory obligations to the Plaintiff under the Texas Insurance Code when no policy for coverage existed, and Plaintiff has not established any other reason to find Defendants liable for any alleged violations of the Texas Insurance Code.

4. <u>Plaintiff Fails to Adequately Allege Violations of the TDTPA</u>

Plaintiff specifically links her claim for violations of the TDTPA to her allegations of violations of the Texas Insurance Code. ECF No. 1 at ¶ 73 ("Pursuant to Section 17.50 [of the TDTPA], a consumer may bring a cause of action under the [T]DTPA for any violation of the Texas Insurance Code."); ¶ 74 (listing various alleged violations of the Texas Insurance Code as the bases for claims under the TDTPA). Because the Court has found that Plaintiff has failed to adequately allege claims for violations under the Texas Insurance Code, Plaintiff's claim under the TDTPA must also fail. *Hope v. State Farm Lloyds*, No. 5:21-cv-510, 2024 WL 2886166, at *1 (W.D. Tex. May 28, 2024) ("Plaintiff cannot maintain a Section 17.50(a)(4) claim under the [T]DTPA without an underlying violation of Chapter 541 of the [Texas] Insurance Code.").

5. <u>The Ascension Defendants</u>

Because the Court finds that all of Plaintiff's claims against all Defendants fail to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court need not address whether

19

Plaintiff can maintain claims against Ascension Health and Ascension Health d/b/a/ Ascension Personalized Care based on a theory of breach of contract.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Ascension Health, Ascension Health d/b/a/ Ascension Personalized Care, and US Health and Life Insurance Company's motion to dismiss (ECF No. 19) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff shall have fourteen (14) days from the date of this Order, up to and including **May 16, 2025**, to a file an amended complaint. If no amended complaint is filed within the allotted time, the Court will dismiss the case without prejudice.

Dated this 2nd day of May, 2025.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE